UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN SCHNEIDER, POSNETT OMONYI, BARBARA REYES, RAINERIO REYES and OSCAR ROSARIO,<br><br>      Plaintiffs,<br><br>      v.<br><br>BMW OF NORTH AMERICA, LLC, and BAVARIAN MOTOR WORKS,<br><br>      Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*   Civil Action No. 18-cv-12239-IT<br>*<br>*<br>*<br>*<br>* |

MEMORANDUM & ORDER

September 27, 2019

TALWANI, D.J.

Before the court is Defendant BMW of North America, LLC's ("BMW") Motion to Dismiss or in the Alternative Sever [#21] Plaintiffs John Schneider, Posnett Omonyi, Barbara Reyes, Rainerio Reyes, and Oscar Rosario's First Amended Complaint [#15] ("Complaint"). Plaintiffs bring their action based on alleged defects in their BMW vehicles. BMW argues that the Complaint must be dismissed in whole or in part for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted. BMW argues in the alternative that the claims should be severed or dismissed because they are not appropriately joined. As set forth below, the court ALLOWS BMW's motion to dismiss with leave to amend the complaint.

I. **Factual Background as Alleged in the Complaint**

Plaintiffs each purchased BMW vehicles between 2010 and 2013. Compl. ¶¶ 11, 21, 28, 37. When Plaintiffs purchased their vehicles, BMW made representations regarding the vehicles' performance and quality and assured Plaintiffs that their vehicles were free from defects of

workmanship. Compl. ¶ 44. Furthermore, Plaintiffs relied on a warranty provided by BMW at the time of sale that promised that BMW would repair or replace components found to be defective in material or workmanship for four years or 50,000 miles after delivery. Compl. ¶¶ 45-46.

The vehicles that BMW sold to Plaintiffs were all equipped with the "N63" model engine. Compl. ¶ 55. The N63 engine is subject to a manufacturing defect that causes the vehicle to consume oil at an abnormally high rate. Compl. ¶ 51. Specifically, BMW initially marketed the vehicles with a recommended oil service interval of 15,000 miles or two years, but Plaintiffs have experienced oil consumption at a level that requires them to frequently add oil to the engine ("make-up oil") during this interval. Compl. ¶¶ 15, 25, 34, 38.

BMW first became aware of these oil consumption issues no later than 2008 through sources not currently available to Plaintiffs. Compl. ¶ 84. These sources include but are not limited to pre-release testing data, durability testing, early consumer complaints about the oil consumption defect, testing conducted in response to those complaints, aggregate data from BMW dealers, including dealer repair orders and high warranty reimbursement rates, as well as other internal sources. Id.

BMW has acknowledged the oil consumption problem through the issuance of technical service bulletins ("Bulletins") and incentive offers intended to appease dissatisfied customers. Compl. ¶¶ 67-80. The Bulletins evince the severity of the oil consumption problem, reflecting that some engines will consume oil at the rate of 2.5 quarts per 1,000 miles. Compl. ¶ 71. Based on this level of consumption, consumers would have to add almost 40 quarts of make-up oil between the recommended 15,000-mile oil service intervals. It is not normal to add any oil between scheduled oil changes. Compl. ¶ 75.

Plaintiffs have asked BMW to address the issue under the terms of their warranty agreements. BMW has disclaimed any problem with the engines, calling the oil consumption experienced by Plaintiffs "normal." Compl. ¶¶ 14, 17, 24, 31.

## II. Procedural Background

Plaintiffs were members of a certified class of plaintiffs in an action filed in the District of New Jersey in 2015. See Bang v. BMW of North America, LLC, No. CV 15-6945 (D.N.J.) ("Bang Class Action"). Plaintiffs Omonyi, Reyes, and Schneider opted out of the certified class on August 10, 2018, and Plaintiff Rosario opted out on August 23, 2018. See Pls.' Opp'n, Exhs. C, D [#23-3], [#23-4].

Plaintiffs initiated this action on October 26, 2018. In their First Amended Complaint [#15], Plaintiffs allege: (1) that BMW violated the Magnuson-Moss Warranty Act ("Warranty Act") by failing to remedy the defects in the Plaintiffs' vehicles, (2) that BMW violated the Warranty Act and Mass. Gen. L. ch. 106, § 2-314 by selling vehicles that were not merchantable, (3) that BMW violated the Warranty Act and Mass. Gen. L. ch. 106, § 2-313 by breaching express warranties, and (4) that BMW violated Mass. Gen. L. ch. 93A, § 2 ("ch. 93A") by engaging in unlawful or deceptive trade practices. Compl. ¶¶ 108-34.

BMW responded with the pending Motion to Dismiss [#21]. BMW contends that dismissal is required in whole or part on the following grounds: (1) that the court lacks subject matter jurisdiction, (2) that Plaintiffs have failed to state a claim for breach of express warranty, (3) that Plaintiffs have failed to state a claim for breach of the implied warranty of merchantability, (4) that Plaintiffs' claims are time-barred, and (5) that Plaintiffs failed to state a claim for violation of Massachusetts' consumer protection statute. BMW moves in the alternative that the claims should be severed or dismissed because they are not appropriately

3

joined. The court proceeds first with the question of subject matter jurisdiction. Although the motion is allowed on this ground, the court proceeds to the related issue of joinder, and then addresses the 12(b)(6) arguments, and concludes that the complaint survives these other challenges such that leave to amend is allowed.

### III. Discussion

#### a. Subject Matter Jurisdiction under the Warranty Act

Under the Warranty Act, a United States district court may exercise subject-matter jurisdiction over claims for breach of express and implied warranty:

> (A) if the amount in controversy of any individual claim is less than the sum or value of $25;
>
> (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or
>
> (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

15 U.S.C. § 2310(d)(3). BMW contends that the court lacks subject-matter jurisdiction over Plaintiffs' claims because "Plaintiffs, to a legal certainty, do not meet the $50,000 amount in controversy threshold" for claims brought under the Warranty Act. Def.'s Mem. 4 [#22] (citing 15 U.S.C. § 2310(d)(3)(B)).

Defendant argues as follows. First, Plaintiffs have not alleged that their engines "actually failed, were at risk of failing, or were actually repaired in connection with engine failure." Id. at 5. Second, Plaintiffs have not pleaded facts substantiating any out-of-pocket expenses besides the purchase of make-up oil which, Defendant argues, could not reach the $50,000 total. Id. at 5-6. Finally, Plaintiffs' allegations that they will suffer significant economic loss when they sell the subject vehicles is entirely hypothetical and unsupported by any factual allegations. Id. at 6.

Damages available under alleged violations of the Warranty Act are calculated based on state law. Torres-Fuentes v. Motorambar, Inc., 396 F.3d 474, 475 (1st Cir. 2005); see also Schimmer v. Jaguar Cars, Inc., 384 F.3d 402, 405 (7th Cir. 2004); Boyd v. Homes of Legend, Inc., 188 F.3d 1294, 1298 (11th Cir. 1999). Both parties agree that the applicable Massachusetts law specifies that damages for breach of warranty is "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." Def.'s Mem. 4-5 [#22] and Pls.' Opp'n 5-6 [#23] (citing Canal Elec. Co. v. Westinghouse Elec. Corp., 756 F. Supp. 620, 627 (D. Mass. 1990) and M.G.L. ch. 106, § 2-714(2), respectively).

As with the amount-in-controversy requirement for claims arising out of diversity jurisdiction, courts provide plaintiffs "the benefit of the doubt" and will determine that the amount-in-controversy requirement is met unless it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." See Gardynski-Leschuck v. Ford Motor Co., 142 F.3d 955, 957 (7th Cir. 1998) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)).

The First Circuit has directed that determining the amount-in-controversy for purposes of subject-matter jurisdiction should "be done quickly, without an extensive fact-finding inquiry." Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001). The court should accept a plaintiff's general allegation of damages that meets the amount requirement as sufficient unless an objection is raised by the opposing party. Id. at 5. If challenged, "the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount. A party may meet this burden by amending the pleadings or by submitting affidavits." Id. (internal citations omitted).

5

Under the plain language of the statute, multiple plaintiffs' claims may be aggregated in determining the total amount in controversy. 15 U.S.C. § 2310(d)(3)(B). Although the First Circuit has not directly addressed the question, claims must satisfy the requirements for joinder under Rule 20 of the Federal Rules of Civil Procedure to be aggregated. See, e.g., Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 242-43 (2d Cir. 1986) ("individual claims may be aggregated toward satisfaction of the $50,000 requirement if the claims satisfy the requirements for joinder under Rule 20"). The court addresses the joinder issue below.

Because Defendant has challenged the amount-in-controversy requirement, the court must discern whether Plaintiffs (either individually, or jointly, assuming joinder requirements are satisfied) have pleaded sufficient facts to reach the $50,000 requirement of the Warranty Act. Under Massachusetts law, a prevailing warranty claim would entitle Plaintiffs to "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." Canal Elec. Co., 756 F. Supp. at 627. Plaintiffs argue that the value of the cars if they had been as warranted is approximately $300,000, Pls.' Opp'n. 6 n.3 [#23], while Defendant contends that this assertion in not in the complaint and should be disregarded. Def.'s Reply 2 [#28]. But even if the court accepted the value as warranted, Plaintiffs have not alleged any facts concerning the values of the cars *as accepted.* While Plaintiffs have provided plausible allegations that the cars are worth less as a result of the defect, this alone is not sufficient for the court to conclude that the $50,000 amount-in-controversy requirement is met.[1] The supplementary authority provided by Plaintiffs, Carroll v.

---

[1] Plaintiffs' out-of-pocket expenses related to the make-up oil they purchased also is insufficient. These amounts, while more adequately specified, do not reach the $50,000 amount-in-controversy requirement for the reasons explained by Defendant. See Def.'s Mem. 6 n.5 [#22].

BMW of N. Am., LLC, is instructive on the deficiency in this case. See No. 19-cv-00224-JMS-TAB, 2019 WL 2059619, at *5 (S.D. Ind. May 9, 2019). There, the court concluded that the amount-in-controversy requirement had been satisfied in part because the plaintiff had alleged facts concerning the present value of the vehicle as compared to the purchase price. Id. at *5. No such facts have been alleged here.

Furthermore, to the extent that Plaintiffs seek revocation, the parties have not adequately addressed (1) whether revocation is available, and (2) what amounts, if any, Plaintiffs may have to credit BMW for the use of the cars prior to revocation. Without this information, the court cannot determine if the amount-in-controversy requirement has been satisfied, even employing a quick inquiry without extensive fact-finding in the manner directed by this Circuit.[2] Accordingly, the court concludes that Plaintiffs have not yet sufficiently pleaded facts necessary for this court's exercise of subject-matter jurisdiction.

### b. Improper Joinder

Because the question of joinder may have bearing on whether the Plaintiffs' claims may be aggregated for purposes of subject matter jurisdiction, the court turns next to Defendant's contention that Plaintiffs' claims are misjoined pursuant to Fed. R. Civ. P. 20 and must be severed or dismissed.

---

[2] Plaintiffs request that the court also consider potential double and treble damages recoverable under Count 4, Plaintiffs' ch. 93A claim, which is brought as a supplemental state law claim, not as a Warranty Act claim. The language of the Warranty Act is ambiguous here, as the phrase "all claims" in § 2310(d)(3)(B) can be construed to refer to claims in addition to Warranty Act claims, or to Warranty Act claims held by more than one plaintiff. Neither side's brief addressed this question of law. For the reasons discussed above, the court's determination here does not turn on this question and so it is not resolved at this time. If Plaintiffs intend to rely on ch. 93A remedies to satisfy the amount-in-controversy requirement of the Warranty Act in their amended pleadings, they should promptly alert the court. In that event, the court may request additional briefing so that the court may resolve this issue prior to the filing of an amended pleading.

Defendant argues first that because Plaintiffs opted-out of a class action, they may not pursue their action together. Defendant offers no support for this argument from the Federal Rules of Civil Procedure or any statute. Defendant relies instead on a handful of non-controlling cases, whose reasoning is of little persuasive value here. In <u>Bay Area Injury Rehab Specialists Holding, Inc., v. United Services Automobile Association</u>, 173 So.3d 1004 (Fla. Dist. Ct. App. 2015), for example, the court held that a party who opts out of a class action retains the right to proceed in its own subsequent lawsuit, but not to bring a class action on behalf of other opt-outs. The case did not address the issue of joinder, but turned instead on concerns of "serial class actions." Here, Plaintiffs do not seek to bring a new class action.

In <u>In re Diet Drugs</u>, 325 F.Supp.2d 540 (E.D. Pa. 2004), sixty-two plaintiffs with claims of valvular heart disease caused by diet drugs opted out of the settlement reached in that combined class action and multidistrict litigation ("MDL") and sought to litigate their claims in a single action in state court. Their action was removed and transferred to the MDL. The transferee judge severed the claims on the ground of misjoinder, not because the plaintiffs were opt-outs from the class action, but because they did not meet the requirements for joinder under Rule 20. The plaintiffs did not object to the severance of their claims, and instead, disputed only whether separate filing fees should be paid. <u>In re BitTorrent Adult Film Copyright Infringement Cases</u>, 296 F.R.D. 80 (E.D.N.Y. 2012) and <u>Seroquel Products Liability Litigation</u>, No. 6:06-md-1769-ORL, 2007 WL 737589 (M.D. Florida 2007) do not involve prior class or opt-outs at all.

Defendant's related argument that the "batching" of claims is all part of a fraud perpetrated by Plaintiffs against the court to avoid paying filing fees and to "flood[] the courts with meritless claims," Def.'s Mem. 18-19 [#22], is a serious allegation. The court does not discern any bad faith on the part of Plaintiffs or their counsel in the decision to join these

8

Plaintiffs' claims. Indeed, if the claims meet the requirements of Rule 20, treating the claims of these five plaintiffs in one action may well pose less burden on the court (and Defendant) than five separate actions. Regardless, the court will examine whether joinder is appropriate here based on the facts in front of it and not BMW's unfounded speculation or the court's convenience.

The permissive joinder rule is straightforward: "Persons may join in one action as plaintiffs if they assert any right . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences and . . . any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(B). To justify permissive joinder, a plaintiff must demonstrate that he has "some right to relief . . . growing out of the events in question." Carroll v. Bhd. of R. R. Trainmen, 417 F.2d 1025, 1027 (1st Cir. 1969). The purpose of permissive joinder of parties is "to promote trial convenience and expedite the final determination of disputes." Third Degree Films v. Does 1-47, 286 F.R.D. 188, 196 (D. Mass. 2012) (citing 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1652 (3d ed. 2012)).

Here, Plaintiffs' claims all arise out the same alleged facts: BMW manufactured vehicle engines that were defective; knowing that they were defective, BMW sold the vehicles to Plaintiffs; afterwards, BMW engaged in conduct that interfered with Plaintiffs' ability to discover the problem; and then, BMW failed to abide by the express and implied terms of its warranty agreement.[3] As a result of the numerous and foundational similarities in the different

---

[3] Although the court is not bound by the findings of Judge Arleo of the District of New Jersey, the court notes that in approving the Bang Class Action Settlement, she found that "questions of law and fact common to class members *predominate* over any questions affecting only

plaintiffs' claims, joinder of the parties allows for the court and all of the parties to proceed more efficiently. Accordingly, permissive joinder is appropriate at this time.

### c. Defendant's 12(b)(6) challenges

To survive a motion to dismiss, the well-pleaded facts in a plaintiff's complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). As the First Circuit has explained, in reviewing a complaint under a Rule 12 motion to dismiss, the court "must distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Cardigan Mountain Sch. v. New Hampshire Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (internal citations and quotations omitted). The plausible factual allegations, taken as true, must ultimately be able to support the legal conclusion that underlies each claim for relief. See Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). The court now addresses each of Defendant's assertions for why dismissal would be proper under these standards.

#### i. Breach of the Express Warranty

Defendant argues that Counts 1 and 3 must be dismissed because Plaintiffs have failed to plead a breach of the express warranty. In support of this argument, Defendant notes that the governing terms of the express warranty only address "material and workmanship" and that the pleadings, instead, state a claim for a design defect. Def.'s Mem. 7 [#22].

The court is not aware of, nor do the parties cite, a case interpreting Massachusetts law that defines the difference between a design defect versus a "material and workmanship" defect

---

individuals members." Order Granting Pls.' Motion for Final Approval of Class Action Settlement, Bang, supra, at ¶ 4 (Sept. 11, 2018), ECF No. 122 (emphasis added). Defendant offers no persuasive reason for a different analysis here.

for the purpose of applying express warranty terms. However, the court does find the Eighth Circuit's opinion in Bruce Martin Const., Inc. v. CTB, Inc. to be compelling. 735 F.3d 750 (8th Cir. 2013). There, the Eighth Circuit succinctly held that "where a product is manufactured correctly but designed inappropriately, the defect is one of design and not 'material or workmanship.'" Id. at 753.

Plaintiffs claim that their engines were subject to a manufacturing defect that resulted in extreme oil consumption. Compl. ¶ 51. These claims are plausible on their face since the issue, while widespread, does not appear universal. Compl. ¶ 60. The plausibility of the claims is buttressed by the Bulletin that BMW issued to service providers: "due to damaged seal ring, during assembly, engine oil is leaking from engine oil pump volume control valve gasket seal ring." Compl. ¶ 68. The models referenced in the TSB correspond with the models that have the N63 engine. Compl. ¶ 54. These allegations, taken together, satisfy Plaintiffs' pleading requirements.

### ii. Breach of Implied Warranty of Merchantability

Defendant contends that Massachusetts' economic loss doctrine bars the breach of implied warranty claims (Counts 1 and 2) because Plaintiffs have failed to plead non-economic damages. Def.'s Mem. 7 [#22]. In Massachusetts, "purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage." FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993). Defendant states that Plaintiffs' breach of implied warranty claims sound in tort, consist only of economic loss, and thus run afoul of this doctrine. Plaintiffs contest each assertion. Because the court finds that Plaintiffs' breach of implied warranty claims sound in contract, and thus are not subject to the economic loss

doctrine, the court does not address the question of whether Plaintiffs demand more than economic losses.

The economic loss doctrine "forms the basis for the breach of warranty classifications." W.R. Const. & Consulting Inc. v. Jeld-Wen, Inc., No. CIV.A.01-10098-DPW, 2002 WL 31194870, at *7 (D. Mass. Sept. 20, 2002) (unreported). This doctrine distinguishes between contract and tort claims—that is, situations "where the injury suffered is merely 'the failure of the product to function properly,' and the situation . . . where the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or property." Id. (internal citations omitted).

The economic loss doctrine hinges on the idea that damage to a product (as opposed to a customer) simply means that "the customer has received 'insufficient product value.' The maintenance of product value and quality is precisely the purpose of express and implied warranties." Sebago, Inc. v. Beazer E., Inc., 18 F. Supp. 2d 70, 89 (D. Mass. 1998) (citing E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 872 (1986)). Implied warranties, as indicated by the Massachusetts Supreme Judicial Court, are "grounded in contract." Commonwealth v. Johnson Insulation, 425 Mass. 650, 653 (1997).

Plaintiffs' sought-after damages sound squarely in contract because they primarily seek 1) revocation of the contract, 2) money damages in the form of a refund of the full contract prices, and 3) equitable relief including specific performance. Compl. ¶ 134. These are remedies in contract, not tort. Thus, the economic loss doctrine does not bar Plaintiffs' claims. See Jacobs v. Yamaha Motor Corp., U.S.A., 420 Mass. 323, 330 (1995) ("recognizing the right of a buyer of consumer goods to sue the manufacturer directly for a breach of an implied warranty of merchantability" when relying on "contract-based warranty claims").

### iii. <u>Statute of Limitations</u>

Defendant asserts that all of Plaintiffs' claims are time-barred under the applicable statute of limitations. Def.'s Mem. 8 [#22]. The parties agree that the statutes of limitations on all counts are based on the underlying state law periods: four years for both the contract-related breach of warranty claims and the ch. 93A claim. <u>Id.</u>; Pls.' Opp'n 13 [#23]. The parties disagree about whether the claims were tolled. Specifically, Plaintiffs offer four different theories of tolling: (1) fraudulent concealment, (2) the discovery rule, (3) equitable estoppel, and (4) that the claims were tolled during the pendency of the Bang Class Action." Compl. ¶¶ 92-107.

For Defendant to prevail on its affirmative statute of limitations defense, the factual basis for the defense must "(1) be definitively ascertainable from the complaint and other allowable sources of information, and (2) suffice to establish the affirmative defense with certitude." <u>Gray v. Evercore Restructuring L.L.C.</u>, 544 F.3d 320, 324 (1st Cir. 2008) (internal citations and quotations omitted). If the application of the statute of limitations "turn on disputed issues of fact, those facts 'must be resolved by a jury'." <u>Nat'l Ass'n of Gov't Emps. v. Mulligan</u>, 854 F. Supp. 2d 126, 131 (D. Mass. 2012) (citing <u>Taygeta Corp. v. Varian Assocs., Inc.</u>, 436 Mass. 217, 230 n.14 (2002)).

The first three tolling arguments presented by Plaintiffs would all be satisfied by a common premise: that Defendant took steps to conceal the engine issue from Plaintiffs, which interfered with Plaintiffs' ability to learn that Defendant had injured them. <u>Compare</u> Mass. Gen. Laws Ann. ch. 260, § 12 ("If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action") <u>with</u> <u>Albrecht v. Clifford</u>, 436 Mass. 706, 714

(2002) (Noting discovery rule applies "where a wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive") and <u>Ramirez-Carlo v. United States</u>, 496 F.3d 41, 48 n.3 (1st Cir. 2007) ("The doctrine of equitable tolling suspends the running of the statute of limitations if a plaintiff, in the exercise of reasonable diligence, could not have discovered information essential to the suit") (internal citation omitted).

Plaintiffs make the following plausible allegations that support the common premise to the three tolling theories: BMW knew of the defect in the N63 engines as early as 2008. Compl. ¶ 84. Knowing of the defect, BMW sold the cars with the N63 engine. Compl. ¶ 53-54. Each of the Plaintiffs approached BMW with concerns that were consistent with the known defect. Compl. ¶¶ 14, 17, 24, 31. In response, BMW made statements that had the effect of making Plaintiffs believe that no problem really existed. <u>Id.</u> BMW took systemic efforts to interfere with owners' ability to detect the problem and did so in a way that created the possibility of damage to the vehicle. Compl. ¶ 70. Even applying the heightened pleading standards of Fed. R. Civ. P. 9(b), Plaintiffs allege a plausible set of facts that would entitle them to tolling of the statute of limitations. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 669 (2009). Accordingly, whether fraudulent concealment, the discovery rule, or equitable tolling should apply remains a question of fact that should be determined by the jury. <u>Taygeta Corp.</u>, 436 Mass. at 230 n.14.

When the jury does make the statute of limitations determination, the period between when the Bang Class Action was filed and when each Plaintiff opted-out will be tolled. <u>Crown, Cork & Seal Co., Inc. v. Parker</u>, 462 U.S. 345, 352 (1983). Defendant's argument that <u>Crown, Cork & Seal</u> does not apply because the Supreme Court held in <u>China Agritech, Inc. v. Resh</u>, 138 S. Ct. 1800, 1806 (2018), that the statute of limitations is not tolled *for successive class actions* is inapposite for the very fact that *this case is not a class action*.

### iv. Failure to State a Claim for Ch. 93A

"Generally, a breach of warranty constitutes a violation of G.L. c. 93A. § 2" Maillet v. ATF-Davidson Co. Inc., 407 Mass. 185, 193 (1990). See also Glyptal Inc. v. Engelhard Corp., 801 F. Supp. 887, 899 (D. Mass. 1992) ("Breaches of express and implied warranties constitute a virtual per se violation of Mass. Gen. L. ch. 93A, § 2."). Defendant concedes as much. See Def.'s Mem. 16 [#22]. Accordingly, for the reasons previously discussed in sections III(c)(i) and (ii), Plaintiffs' ch. 93A claims have been properly pleaded.

However, Defendant further contends that Plaintiff Schneider has failed to allege that the conduct giving rise to his ch. 93A claim occurred "primarily and substantially" within the state of Massachusetts. Def.'s Mem. 17 [#22]. Defendant states that such is a requirement of the Act. Id. But, as Plaintiffs argue in their opposition, the "primarily and substantially" language appears in section 11 of the Act, which applies to "[a]ny person who engages in the conduct of any trade or commerce." Because Plaintiffs bring their ch. 93A claim under section 9 of the Act and section 9 does not contain this limiting language, Defendant's argument is without merit.

## IV. Conclusion

The court ALLOWS Defendant's Motion to Dismiss [#21] for failing to sufficiently establish the court's subject-matter jurisdiction. However, Plaintiffs are granted leave to amend the complaint in support of their claim that the amount-in-controversy is greater than $50,000. Plaintiffs' amended complaint and affidavits in support thereof are due no later than **Friday, October 25, 2019.**

IT IS SO ORDERED.

September 27, 2019                                         /s/ Indira Talwani
                                                           United States District Judge