UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN SCHNEIDER, et al., | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | *   Civil Action No. 1:18-cv-12239-IT |
| | * |
| BMW OF NORTH AMERICA, LLC, | * |
| | * |
| Defendant. | * |

MEMORANDUM AND ORDER
DENYING IN PART AND GRANTING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

February 22, 2022

TALWANI, D.J.

    Plaintiffs John Schneider, Posnett Omonyi, and Rainerio Reyes bring claims against Defendant BWM of North America, LLC ("BMW") for breach of warranty and deceptive consumer practices. Plaintiffs all purchased BMW vehicles with N63 engines, which Plaintiffs contend contained a defective component that causes excessive oil consumption. Pending before the court are the parties' cross motions for summary judgment. In this Memorandum and Order, the court addresses BMW's contention that each Plaintiff's claims are time-barred under the applicable statute of limitations. The court will address Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 221] and the balance of BMW's Motion for Summary Judgment [Doc. No. 258] separately.

    I.    **STATEMENT OF FACTS RELATING TO STATUTE OF LIMITATIONS**

    Plaintiffs Schneider, Omonyi, and Reyes purchased vehicles with N63 engines from certified BMW dealerships between 2010 and 2013. When each car was purchased, BMW "warrant[ed] . . . against defects in materials or workmanship" for the earlier of four years or

50,000 miles where "upon discovery of a defect in material or workmanship [the vehicle is brought] to the workshop of an authorized BMW center," and promised "it will, without charge for parts or labor . . . either repair or replace the defective part(s) using new or authorized remanufactured parts" ("New Car Limited Warranty"). Def. Ex. D at 000307, 000667, 001061 [Doc. No. 259-4].

Reyes purchased a 2011 BMW 55i xDrive sedan new from BMW of West Springfield[1] on December 22, 2010. Reyes Dep. Tr. 40:9–24 [Doc. No. 259-22]. The vehicle had a New Car Limited Warranty that expired on December 21, 2014. Id. at 34:6–13; Def. Ex. W [Doc. No. 259-23]. Over the first two years, the vehicle accumulated approximately 11,715 miles. Reyes Dep. Tr. 44:8–17 [Doc. No. 223-3]. During that period, the oil light illuminated at least twice, and each time Reyes brought his car to a BMW dealership for service. Id. at 45:4–17. After the oil light came on the first time, the technician told Reyes it was normal for the car to burn oil. Id. at 48:12–20. He explained that BMW recommends adding two quarts "when it asks for oil." and added two quarts of oil to Reyes's car. Id. at 48:12–20, 50:20–51:16. Thereafter, Reyes "just assumed that it was normal," "that you had to add oil every once a while," and did not complain to BMW again during the first "couple years" of ownership. Id. Over time, the rate at which the oil light illuminated increased and by 2017 or 2018 Reyes was adding two quarts of oil "about every thousand miles." Id. at 50:9–15.

Omonyi purchased a 2013 BMW X5 new from Herb Chambers BMW of Sudbury on December 31, 2012, or January 26, 2013.[2] Sec. Am. Compl. ¶ 22 [Doc. No. 45]; Reyes Dep. Tr.

---

[1] BMW of West Springfield and Gengras refer to the same dealership; Reyes used the names interchangeably in his testimony. See Reyes Dep. Tr. 40:9–19 [Doc. No. 259-22].

[2] Though Omonyi testified that he purchased his vehicle on January 26, 2013, the vehicle's Warranty Report, Def. Ex. AA [Doc. No. 259-37], states that the vehicle was purchased on December 31, 2012, and further that the four year or 50,000 mile New Vehicle Limited Warranty

40:9–24 [Doc. No. 259-22]. The vehicle had a New Car Limited Warranty, which expired on the sooner of December 31, 2016, or 50,000 miles. Def. Ex. AA [Doc. No. 259-37].

Schneider purchased a 2010 BMW 750 Li used from BMW of Warwick on February 2, 2013. Sec. Am. Compl. ¶ 10 [Doc. No. 45]. The vehicle had one year and two months remaining on its New Car Limited Warranty, which expired on the sooner of April 12, 2014, or 50,000 miles. Def. Ex. DD [Doc. No. 259-30]. Schneider's vehicle also had a Certified Pre-Owned Warranty that expired on April 12, 2016. Id.

On September 18, 2015, purchasers of BMW vehicles equipped with N63 engines filed a class action lawsuit against BMW in the District of New Jersey. The plaintiffs alleged that BMW sold them vehicles with a defective component that caused excessive oil consumption and contended that BMW's handling of the issue constituted a breach of its New Car Limited Warranty, its implied warranty of merchantability, and various state law causes of action for deceptive consumer practices. See Bang v. BMW of N. Am., LLC, No. CV 15-6945 (D.N.J.) ("Bang Class Action"). Plaintiffs here were putative members of the Bang class but chose to opt out of the class settlement on the following dates: Reyes on June 15, 2018; Omonyi on June 13, 2018; and Schneider on August 6, 2018. Pls. Opp'n to Mot. to Dismiss, Ex. C at 6–8 [Doc. No. 23-3].

## II.   STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under

---

expired on December 31, 2016. See Pls. Counterstatement of Facts ¶ 41 [Doc. No. 286]. The discrepancy is not material here.

3

the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Baker v. St. Paul Travelers, Inc., 670 F.3d 119, 125 (1st Cir. 2012). A dispute is genuine if a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be satisfied in two ways: (1) by submitting affirmative evidence that negates an essential element of the non-moving party's claim or (2) by demonstrating that the non-moving party failed to establish an essential element of its claim. Id. at 331.

Once the moving party establishes the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to set forth facts demonstrating that a genuine dispute of material fact remains. Id. at 314. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of [the] pleadings." Anderson, 477 U.S. at 256. Rather, the non-moving party must "go beyond the pleadings and by [his or] her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Disputes over facts "that are irrelevant or unnecessary" will not preclude summary judgment. Anderson, 477 U.S. at 248.

### III. DISCUSSION

Massachusetts law governs the statute of limitations for each count.[3] For the contract-based breach of warranty claims (Counts I, II, III), see M.G.L. c. 106 § 2-725, and the § 93A-

---

[3] Where a federal statute does not expressly contain a statute of limitations, the court generally will "borrow" a limitations period from an analogous state cause of action. North Star Steel Co. v. Thomas, 515 U.S. 29, 33–35 (1995). Because the Warranty Act does not contain its own

based unfair and deceptive practices claim (Count IV), see M.G.L. c. 93A §§ 2, 9 ("93A"), an action must be commenced within four years of the date when the cause of action accrues. The parties agree that the applicable limitations period is four years but disagree as to when the four years began to accrue.

A cause of action for breach of contract accrues from the date the alleged breach occurs. M.G.L. c. 106 § 2-725.[4] Generally, a breach of warranty occurs when delivery is tendered "regardless of the aggrieved party's lack of knowledge of the breach." Id. However, where the warranty explicitly extends to future performance of the purchased goods and discovery of the breach must await the time of such performance, the breach of warranty claim does not accrue until the breach is or should have been discovered. Id. Claims under § 93A accrue according to the standard applied to the underlying action, which here is a breach of warranty. See Hanson Hous. Auth. v. Dryvit Sys., Inc., 560 N.E.2d 1290, 1295 (Mass. App. Ct. 1990) (Section 93A cause of action accrues based on the "the same principles as govern the determination of the underlying action"). Accordingly, the limitations period for all claims is governed by the principles set out in § 2-725 for breach of warranty claims.

Under § 2-725's default rule, the four year limitations period would have commenced as to each Plaintiff's claims on or around the date of purchase: December 22, 2010, for Reyes, Reyes Dep. Tr. at 40:9–24 [Doc. No. 259-22]; January 26, 2013, for Omonyi, Omonyi Dep. Tr. at 33:2–10 [Doc. No. 223-1]; and February 3, 2013, for Schneider, Schneider Dep. Tr. at 40:17-

---

statute of limitations, courts apply the limitations period applicable to the breach of warranty claims under state law when adjudicating Warranty Act claims. See e.g., Duncan v. Nissan N. Am., Inc., 305 F. Supp. 3d 311, 320 (D. Mass. 2018); Carroll v. BMW of N. Am., LLC, 2019 WL 4243153, at *7 (S.D. Ind. Sept. 6, 2019) (applying Indiana law).

[4] A "contract for sale" under this chapter is limited to contracts relating to the sale of goods. M.G.L. c. 106 § 2-106 (defining "contract for sale").

20, 2:22–22:2 [Doc. No. 259-29]. Because this action was commenced on October 26, 2018, well over four years after each purchase date, Plaintiffs' claims are time-barred unless they fall within the § 2-725 exception or are otherwise entitled to tolling. Plaintiffs make several arguments.

A.   Class Action Tolling

First, Plaintiffs contend class action tolling applies to their claims. Under this doctrine "commencement of a class action suspends the applicable statute of limitations [on substantially similar claims] as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554 (1974). Here, Plaintiffs argue that their claims were tolled during the time they were members of the putative class in Bang, Civ. No. 15-6945.

BMW's Motion to Dismiss [Doc. No. 21] the First Amended Complaint [Doc. No. 15] disputed that class action tolling applied. The court rejected this argument, finding that when the statute of limitations determination is made based on the factual record, the statute of limitations was tolled for "the period between when the Bang Class Action was filed and when each Plaintiff opted-out." Order 14 [Doc. No. 44]; see Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345, 352 (1983).

BMW now argues that Plaintiffs' 93A claims are not subject to class action tolling because "the Bang plaintiffs did not assert Chapter 93A claims." Def. Reply 7 [Doc. No. 292-1]. The named plaintiffs in Bang, who were not Massachusetts residents, raised claims under state consumer fraud statutes from their home states that are substantially similar to 93A. See Bang, No. CV 15-6945; see also Sec. Am. Compl. at ¶¶ 198–371 [Doc No. 32]. Plaintiffs are entitled to class action tolling where their subsequent individual claims are sufficiently similar to the claims brought by the failed class such that the class action effectively put the defendant on notice of the

6

plaintiffs' potential claims. See Arivella v. Lucent Techs., Inc., 623 F.Supp.2d 164, 180 (D. Mass. 2009) (citations omitted). Accordingly, the court finds Plaintiffs' 93A claims are tolled for the same reasons as the warranty-based claims here. See id. at 180 (citations omitted); see also Special Situations Fund III, L.P. v. Am. Dental Partners, Inc., 775 F.Supp.2d 227, 246 (D. Mass. 2011) (declining to apply class action tolling where the newly asserted claim required "significantly different" factual pleadings and introduced a "sufficiently distinct" legal standard).

Applying class action tolling here, the undisputed facts on summary judgment show that, even assuming no other exceptions apply, the limitations periods of Schneider and Omonyi's breach of warranty and 93A claims began running when they accepted delivery of their vehicles in winter 2013, and were still running on September 18, 2015, when the complaint was filed in Bang. Schneider and Omonyi's claims were then tolled for the nearly three years between the commencement of the Bang class action on September 18, 2015, and their decisions to opt-out from the class settlement on August 6, 2018, and June 13, 2018, respectively, making their claims timely.[5] See Pls. Opp'n to Mot. to Dismiss, Ex. C [Doc. No. 23-3].

---

[5] The court calculates the limitations periods as follows: Under the default rule, the statute of limitations on Schneider's claims ran for two years, seven months, and sixteen days before it was tolled by the Bang class action, and then for another two months and twenty days between his opt-out from the Bang settlement and commencement of this action. Accordingly, the statute of limitations on Schneider's claims had run for two years, ten months, and five days when he initiated this action, well within the four-year limitations period. Likewise, the statute of limitations on Omonyi's claims ran for two years, seven months, and twenty-three days, based on the January 26, 2013 purchase date, and then for an additional four months and thirteen days between his opt-out of the class settlement and commencement of this action. Accordingly, the statute of limitations on Omonyi's claims had run for three years and five days when he initiated this action, also well within the four-year limitations period.

The four year limitations period on Reyes's claims, however, commenced in December 2010 and had expired by September 2015 when the Bang matter commenced, unless the cause of action did not accrue before September 19, 2011, under a separate tolling doctrine.[6]

B.	Discovery Rule

To save his claims, Reyes seeks to invoke the discovery rule. He contends that until BMW acknowledged that his vehicle's excessive oil consumption was not normal, he could not have known his car had a defect and that therefore, under the discovery rule, his claims are timely.

The discovery rule is a common law doctrine that delays accrual of a cause of action until the plaintiff knows or should have known of the harm underlying the claim and that the defendant caused it. See Harrington v. Costello, 7 N.E.3d 449, 455 (Mass. 2014). But in Massachusetts, the discovery rule does not apply to contract-based breach of warranty claims where a breach of warranty occurs upon delivery of the goods "regardless of the aggrieved party's lack of knowledge of the breach." See Nemirovsky v. Daikin N. Am., LLC, 177 N.E.3d 901, 915–16 (Mass. 2021) (declining to extend discovery rule to breach of warranty claims because it would undermine purpose of § 2-725); see Cambridge Plating Co. v. Napco, Inc., 991 F.2d 21, 25 (1st Cir. 1993) ("Not all contractual causes of action in Massachusetts are governed by the judicially crafted accrual rules. Claims alleging breach of a contract for the sale of goods

---

[6] Under the default rule, Reyes's statute of limitations expired on December 21, 2014. Should the accrual date be delayed under an applicable exception, his claims are timely only if they accrued on or after January 30, 2012. This date accounts for the eight months and twenty-five days between the expiration of Reyes's four year limitations period under the default rule and the commencement of the Bang class action, which would toll any claims that had not expired on September 18, 2015. The January 30, 2012, date also accounts for the additional four months and eleven days his claims would have run between opting out of the Bang settlement on June 15, 2018, and commencing this action on October 26, 2018. See Pl. Opp'n to Mot. to Dismiss, Ex. C [Doc No. 23-3].

8

instead are subject to the detailed provisions of the UCC"). Accordingly, the discovery rule is inapplicable to Reyes's claims.

      C.      Future Performance Exception

Reyes argues in a Supplemental Brief [Doc. No. 326] that even where the discovery rule does not apply, the future performance exception in § 2-725 has the same delaying effect on the accrual of his claims. BMW responds that its warranty is not one of future performance under § 2-725 and therefore Reyes's claims accrued when he took delivery of his vehicle in 2010.[7]

Section 2–725 provides that the limitations period on claims involving warranties for future performance accrue when "the breach is or should have been discovered" and not when the purchaser accepts delivery. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 323 (1st Cir. 2008) (quoting M.G.L. c. 106 § 2-725). For this discovery-based test to apply: "(1) a warranty must explicitly extend to future performance of the goods and (2) the circumstances must be such that 'discovery of the breach must await' the time of the promised future performance." Coady v. Marvin Lumber & Cedar Co., 167 F. Supp. 2d 166, 170–71 (D. Mass. 2001) (quoting M.G.L. c. 106 § 2-725).

      1.      *Warranty for future performance*

"To determine whether a warranty is one of future performance, [the court] must look to the language of the warranty itself to determine whether it *explicitly* guarantees the future

---

[7] Reyes's counsel first raised this theory at oral argument on the parties' cross motions for summary judgment on January 26, 2022. See Clerk's Notes [Doc. No. 325]. The following day, without seeking leave of court, Reyes filed a Supplemental Briefing [Doc. No. 326] arguing the future performance exception applies. BMW responded with its own Supplemental Memo [Doc. No. 327], also filed without leave of court. Because BMW did not make a waiver argument and because BMW had an opportunity to respond, the court considers Reyes's argument that his claims are saved under the future performance exception and BMW's opposition. Counsel are reminded, however, that leave of court is required before filing supplemental briefing. See Local Rule 7.1(b)(2).

performance of the goods." Trans-Spec, 524 F.3d at 322 (interpreting Massachusetts law) (emphasis in original).

Courts distinguish between warranties that expressly guarantee "the future performance of goods themselves" and warranties that "promise to repair the product if it malfunctions." 524 F.3d at 323; see also New England Power Co. v. Riley Stoker Corp., 477 N.E.2d 1054, 1056 n.4, 1058 (Mass. App. Ct. 1985) (discussing a "promise to repair" in a case that did not involve a warranty of future performance). In Trans-Spec, the First Circuit, applying Massachusetts law, held that an express limited warranty to repair or replace contained in an "Extended Service Coverage . . . contract . . . cover[ing] components failures due to defects in . . . materials or workmanship" failed as a warranty for future performance under § 2-725 because it "never guaranteed that [defendant's] engines would not fail; it merely warranted that defendant would pay to repair them if they did fail." 524 F.3d at 324 ("repair promise warrants the future performance of the warrantor, not the goods"). The court contrasted this provision with a Limited Warranty document that provided: "These parts are warranted against defects in material and workmanship for 60 months or 500,000 miles or 10,000 operating hours, whichever occurs first after date of delivery to the first user." Id. at 324 n.6. The court suggested in dicta that this language "could reasonably be construed as a five-year warranty of future performance on certain parts." Id.

Accordingly, the central question for determining here if the warranty falls within the future performance exception under § 2-725 is whether the manufacturer guaranteed the future performance of the goods or the warrantor. See id. at 324.

Here, the language at issue explicitly "warrant[ed] . . . against defects in materials or workmanship" for the earlier of four years or 50,000 miles. Def. Ex. D at 000667 [Doc. No. 259-

4]. It is also contained in BMW's express New Car Limited Warranty, and not in a separate service contract as was the case in Trans-Spec. Accordingly, the court concludes that BMW's express limited warranty did not guarantee the performance of the warrantor (BMW) but the performance of the "materials and workmanship" of its goods, thereby making it a warranty for future performance under § 2-725.

Reyes's claims for breach of BMW's implied warranty of merchantability, however, do not involve a warranty for future performance. An implied warranty lacks any explicit promise of future performance and therefore is not subject to the future performance exception. See New England Power Co., 477 N.E.2d at 1056 n.4. ("an implied warranty, by its very nature, cannot explicitly extend to future performance" (internal quotations omitted)); see also Costa v. FCA US LLC, 542 F. Supp. 3d 83, 103–04 (D. Mass. 2021) ("Courts applying Massachusetts law have routinely found that because an implied warranty does not extend to future performance, breach of implied warranty claims brought more than four years after delivery are time-barred by § 2-725(2)"). Moreover, because Reyes's 93A claim alleges deceptive practices as to the merchantability of Reyes's vehicle, that claim also is based on a breach of implied warranty and does not fall within the future performance exception.

    2.    *Discovery of breach must await performance*

Even where Reyes's claim for breach of express warranty arises out of promise of future performance, the future performance exception applies only where the breach was undiscoverable on delivery because discovery must "*necessarily* await" future performance. Wilson v. Hammer Holdings, Inc., 850 F.2d 3, 6–7 (1st Cir.1988) (where a warranty specifies a particular time in the future, performance or lack thereof cannot be determined until that time arrives) (emphasis in original). If discovery of the breach is possible before the time specified for

11

future performance, the requirement that discovery "must await" future performance is not met, and the exception does not apply. See Coady, 167 F. Supp. 2d at 170 ("The determinative fact, for purposes of the "must await" requirement, was that discovery was *possible* prior to any specific future time" (emphasis in original)).

Here, for internal combustion engines like Reyes's N63, BMW's internal guidance provides that "the oil consumption should only be checked after car's engine has been run 6000 miles since this distance is required before the engine will have finished its breaking-in process and the oil consumption stabilized." Def. Ex. B at 001631 [Doc. No. 259-2]; see also Def. Ex. Q at 001319 [Doc. No. 259-17] (BMW states in guidance to dealerships "engines with less than 10,000 miles will generally consume additional engine oil because the internal engine components are not fully seated (break-in)"). So, the question of whether excessive oil consumption is a symptom of a larger defect in the "materials and workmanship" of a new engine–like the one in the vehicle Reyes purchased–is one that "must necessarily wait" until the car has been driven at least 6000 miles. See Wilson, 850 F.2d at 6. Therefore, the court finds Reyes's breach of express warranty claim did not begin to accrue until Reyes was on notice of the alleged breach, pursuant to the future performance exception under § 2-725.

Accordingly, the cause of action for Reyes's breach of express warranty claim did not accrue until he discovered or should have discovered the defective valve stem seals in his engine. However, Reyes's argument as to when he discovered or should have discovered the defective components is a genuine dispute of fact. Accordingly, to the extent that Reyes relies on the warranty of future performance to rebut BMW's statute of limitations defense, the date Reyes's claim accrued, and therefore whether it was timely, is a question for the jury.

D.      Fraudulent Concealment

As set forth above, under the § 2-725 default rule, Reyes's claims for beach of implied warranty of merchantability (Count III) and 93A (Count IV) accrued when he accepted delivery of his vehicle in December 2010, and are time-barred. Reyes argues that even if these claims accrued when he accepted delivery of his vehicle in 2010, BMW's fraudulent concealment of the abnormality of excessive oil consumption after Reyes complained in late 2011 or early 2012, tolled his claims under the fraudulent concealment doctrine, making them now timely.

Under Massachusetts law, a defendant's fraudulent concealment of a cause of action may toll the statute of limitations, but only where the defendant successfully concealed the cause of action "through some affirmative act done with intent to deceive." White v. Peabody Const. Co., 434 N.E.2d 1015, 1022 (1982); M.G.L. c. 260, § 12; see also Cabrera v. Automax Preowned, Inc., 2020 WL 2198048, at *1 (Mass. Super. Feb. 27, 2020) (tolling available under fraudulent concealment doctrine where actual fraud or breach of a fiduciary duty, but not merely on demonstration there was a failure to disclose). "[A] cause of action is not concealed from [a plaintiff] who has knowledge of the facts that create it." White, 434 N.E.2d at 1022 (citing Stetson v. French, 399 N.E.2d 794, 797 (Ind. App. 1980)). Where the symptoms of a defect were known, the plaintiff had sufficient knowledge of the facts giving rise to a breach of warranty claim to undermine a fraudulent concealment defense. Id. at 1022-23.

In White v. Peabody Const. Co., the Supreme Judicial Court concluded that tenants' breach of design warranty claims were not tolled based on fraudulent concealment where the landlord had misled tenants as to the cause of the leaks because tenants' knowledge of "an extraordinary number of leaks from the time of the initial occupancy" put them on sufficient notice of a potential claim. 434 N.E.2d at 1023. The court explained that even where the landlord "undertook superficial waterproofing repairs" in an "affirmative[] attempt[] to mask the true

13

cause of the leaks," there was no fraudulent concealment because the superficial repairs "did not succeed in concealing" that the repairs were ineffective and the building continued to leak. Id.

Here, like the tenants in White, Reyes knew about the excessive oil consumption within in a year of purchasing his car. And he testified that the oil consumption continued to get worse over time. Reyes Dep. Tr. at 50:9–15 [Doc. No. 223-3]. Regardless of whether BMW took affirmative steps to conceal the cause of the oil consumption, BMW never concealed from Reyes that his car was consuming excessive oil. Id. Therefore, because there is no material distinction between "knowledge of the [excessive oil] and knowledge that the specific causes of the [excessive oil] were design and construction defects" for the purposes of determining whether a cause of action was fraudulently concealed, Reyes's claims are not entitled to tolling under the fraudulent concealment doctrine. Id. at 1022.

E. Equitable Tolling

Finally, Reyes argues BMW should be estopped from raising the statute of limitations defense because BMW knowingly concealed the defect in his N63 engine and intentionally prevented him from bringing his claims within the limitations period. BMW responds where Reyes was aware of the excessive oil consumption equitable tolling is not warranted.

Equitable tolling requires "proof that the defendants made representations they knew or should have known would induce the plaintiffs to put off bringing a suit and that the plaintiffs did in fact delay in reliance on the representations." Id. at 1023. "There are no rigid criteria to apply in determining whether a defendant's conduct was such as to give rise to an estoppel;" however the "doctrine of estoppel is not applied except when to refuse it would be inequitable." New England Power, 477 N.E.2d at 1059; see Ramirez-Carlo v. United States, 496 F.3d 41, 48 n.3 (1st Cir. 2007) (internal citation omitted) ("The doctrine of equitable tolling suspends the running of the statute of limitations if a plaintiff, in the exercise of reasonable diligence, could

14

not have discovered information essential to the suit"). Here, Reyes was aware of the oil consumption issues for at least three of the years his vehicle was under warranty, but after being told once within the first year that it was "normal for the car to burn oil," he "just accepted that" and did not complain at subsequent service visits. Reyes Dep. Tr. 48:12–20, 50:20–51:16 [Doc. No. 223-3]. Accordingly, on these undisputed facts, no reasonable jury could find Reyes exercised reasonable diligence where he failed to investigate the vehicles oil consumption following that single conversation. Id. at 48:12-20–49:22. Accordingly, BMW is not estopped from raising a statute of limitations defense against Reyes's claims.

### IV.     CONCLUSION

For the foregoing reasons, BMW's Motion for Summary Judgment [Doc. No. 258] is DENIED on the statute of limitations argument as to Schneider and Omonyi's claims and as to Reyes's breach of express warranty claim and GRANTED as to Reyes's breach of implied warranty claim and Reyes's 93A claim. The court will address the remaining arguments in BMW's Motion for Summary Judgment [Doc. No. 258] in a subsequent order.

IT IS SO ORDERED.

February 22, 2022                                                /s/ Indira Talwani
                                                                 United States District Judge